[Civ. No. 22678. First Dist., Div. One. Mar. 30, 1966.]

Estate of EDWIN F. SMITH, Deceased. OTTO F. SMITH et al., Petitioners and Respondents, v. DORA W. SMITH, Individually and as Administratrix, etc., Objector and Appellant.

Edward T. Koford and William B. Boone for Objector and Appellant.

Richard F. Pawson for Petitioners and Respondents.

SULLIVAN, P. J.—The sole issue in this case is whether appellant by entering into a property settlement agreement with decedent waived her right as his surviving wife to succeed by inheritance to his estate upon his dying intestate? We have concluded that she did and that the judgment and order determining heirship unfavorably to her claim should be affirmed.

The parties agree on the facts. Appellant Dora W. Smith (Dora) and decedent Erwin F. Smith (Erwin) were married in 1934. On July 1, 1963, Dora commenced an action for divorce. On August 26, 1963, during the pendency of such proceedings, Dora and Erwin entered into a property settlement agreement. On September 11, 1963, appellant was granted an interlocutory decree of divorce which incorporated the property settlement agreement. On April 4, 1964, and before the expiration of the one-year period required for the entry of a final judgment of divorce (Civ. Code, § 132), Erwin died intestate. On April 27, 1964, Dora was appointed administratrix of his estate and letters of administration were duly issued to her.

On October 5, 1964, respondent Otto F. Smith (Otto), decedent's brother, filed a petition to determine interests in estate (Prob. Code, §§ 1080-1082) in which he asserted that Dora was not entitled to any portion of decedent's estate having waived any rights thereto in the aforesaid property settlement agreement. The matter was submitted on the petition and the briefs filed by the parties. Thereafter the court rendered its opinion declaring that Dora was not an heir of decedent. A judgment (decree) and order determining interests in estate was entered accordingly declaring that the decedent's heirs were his four brothers to the exclusion of appellant. This appeal followed.

We first dispose of a preliminary matter. Respondent claims that appellant as administratrix is not a party and has no right to appeal. It is urged that her appeal as administratrix be dismissed with directions that the costs, attorney's fees and

expenses of the proceedings to determine heirship be taxed against appellant individually and not in her capacity as administratrix. The record shows that the instant appeal was taken by Dora in both her individual and her representative capacity. As respondent properly points out, the present controversy is between 'different heirs of the decedent in which the administratrix as such has no interest. (See *Estate of Babb* (1927) 200 Cal. 252, 255 [252 P. 1039].) While the appeal of Dora W. Smith individually is properly before us, her appeal as administratrix must be dismissed. However, whether or not the costs, attorney's fees and other expenses of the proceedings below and before us have been improperly charged against the above entitled estate is a matter for the future determination of the probate court in an appropriate proceeding.

We proceed to the merits of the appeal. The property settlement agreement contains the following introductory recitals: "The parties hereto agree that they are husband and wife; insurmountable marital difficulties have heretofore caused a separation between them and it is their mutual desire to effect a complete settlement of their respective property rights, and to memorialize the same, with reference to their marital status and to each other, and to effectuate the same they hereby agree as follows:" In the first five paragraphs of the agreement each of the parties thereto confirms to the other as his or her separate property, as the case may be, specified items of personal property including cash, automobiles, household furniture and furnishings, clothing and personal effects.

Paragraphs 6 and 9 provide as follows: "6. Except as otherwise provided herein, each of the parties in consideration of the agreements of the other herein expressed, hereby waives, releases and relinquishes to the other all claims which each may now have, or might hereafter otherwise acquire against the other, as husband or wife, or otherwise, arising out of the marital relation, each specifically waiving any right he or she may have to support from the other and waiving any right he or she may have to attorney's fees in any action now pending between them."

"9. All property, whether real, personal or mixed which the parties severally now hold, or may acquire by virtue of or pursuant to this agreement, together with any increment thereon, and all property which either of the parties hereto may hereafter acquire, shall be and remain the separate property and estate of the party so holding, acquiring or to

acquire the same, free from any claim or claims of the other.''

The parties seem to agree that the above-quoted provisions of the agreement are decisive of the controversy at hand. Appellant contends that they do not contain a waiver, arguing that they make no mention of the right of inheritance, that they provide only for a release of ''personal claims'' and a division of property, and that there was no *express* waiver in the agreement and none can be implied. Respondent's position is simply that the express provisions preclude appellant from succeeding to any part of the estate.

It is clear at the outset that despite its references to marital difficulties and a separation and despite the pendency of divorce proceedings at the time of its execution, the property settlement agreement ''in nowise affected the marriage *status;* the parties remained husband and wife.'' (*Jones* v. *Lamont* (1897) 118 Cal. 499, 501 [50 P. 766, 62 Am.St.Rep. 251].) It is also clear that an interlocutory decree of divorce does not 'dissolve the marriage and restore the parties to the status of single persons but that they continue to be husband and wife until the entry of the final judgment of divorce. (*Estate of Dargie* (1912) 162 Cal. 51, 53 [121 P. 320]; *Brown* v. *Brown* (1915) 170 Cal. 1, 3 [147 P. 1168]; *Nelson* v. *Nelson* (1936) 7 Cal.2d 449, 453 [60 P.2d 982]; *Borg* v. *Borg* (1938) 25 Cal.App.2d 25, 29-30 [76 P.2d 218]; *Brown* v. *Brown* (1960) 177 Cal.App.2d 387, 388 [2 Cal.Rptr. 255].) Where, as in the instant case, the husband dies before the entry of a final judgment of divorce, the wife stands in the position of a surviving wife and heir of the decedent at the time of his death and is entitled to such rights as the law confers upon her, including the right of inheritance, unless she has waived or relinquished them. (*Estate of Dargie, supra; Estate of Fulton* (1937) 23 Cal.App.2d 563, 568-570 [73 P.2d 664]; *Luis* v. *Cavin* (1948) 88 Cal.App.2d 107, 117 [198 P.2d 563].)

A wife may waive or relinquish her right of inheritance in her husband's estate by a valid post-nuptial property settlement agreement. (Civ. Code, § 158; *Estate of Davis* (1895) 106 Cal. 453, 455 [39 P. 756]; *Estate of Edelman* (1905) 148 Cal. 233, 236 [82 P. 962, 113 Am.St.Rep. 231]; *Estate of Walker* (1915) 169 Cal. 400, 403 [146 P. 868]; *Estate of Sloan* (1918) 179 Cal. 393, 396 [177 P. 150].)

Whether such right has been waived or relinquished by such an agreement is a question of its interpretation on which

the intent of the parties as gathered from the agreement as a whole is controlling (23 Am.Jur.2d, p. 873), and each case must be decided on its own facts and the particular terms of the agreement involved. (See *First Western Bank & Trust Co.* v. *Omizzolo* (1959) 176 Cal.App.2d 555, 558 [1 Cal.Rptr. 758].) ■ However the rule is settled that a property settlement agreement must be strictly construed so as not to enlarge its language and that a husband or wife will not be held to have waived or relinquished in such agreement his or her right to succeed by inheritance to the property of the other unless the intention to do so is expressed therein in clear and unmistakable language or appears from the provisions by necessary implication. (*Jones* v. *Lamont, supra,* 118 Cal. 499, 502; *Barham* v. *Barham* (1949) 33 Cal.2d 416, 427 [202 P.2d 289]; *Estate of Hurley* (1938) 28 Cal.App.2d 584, 589 [83 P.2d 61]; *Estate of McNutt* (1940) 36 Cal.App.2d 542, 549 [98 P.2d 253]; 34 A.L.R.2d 1020, 1026-1030; 23 Am.Jur.2d, pp. 873-875; 4 Pomeroy's Equity Jurisprudence (5th ed.) § 1290, p. 836.)[1] ■ In view of this rule declared not only by California decisions but by decisions in other jurisdictions, we reject the narrower proposition advanced by appellant that there cannot be a waiver of the right of inheritance unless there is an *express* renunciation of the *specific* right.

In *Estate of Davis, supra,* 106 Cal. 453, upon which the trial court based its decision[2] and respondent relies, the wife in a separation agreement agreed " 'that she will receive the same in full satisfaction of all claims she may have as the wife of

---

[1]In *Hewitt* v. *Shipley* (1935) 169 Md. 221 [181 A. 345, 347] the court in following the above rule stated that "the term 'necessary implication' when used in this sense implies so strong a probability of intention that an intent to the contrary than that imputed to one of the parties to such an instrument cannot be reasonably supposed, . . ." It is noteworthy that *Hewitt* relied, among other cases, on *Girard* v. *Girard* (1923) 29 N.M. 189 [221 P. 801, 35 A.L.R. 1493], which was relied upon by the California District Court of Appeal in *McNutt* and indirectly by the California Supreme Court in *Barham.*

[2]In his memorandum opinion the learned trial judge stated in pertinent part: "The question to be decided is a factual one involving the intention of the parties as disclosed by the terms of the agreement. In arriving at such a decision the court must look to former decisions construing similar language. The court, in the case of *In Re Davis,* 106 Cal. 453 [39 P. 756], construed language indistinguishable from that in the principal case as evidencing an intent to mutually release all inheritable interest of each of the spouses in the property and estate of the other. To equivocate by attempting to distinguish between the language used in the Davis case and that used in the principal case would amount to a literal 'play of words.' Since the court, in 1895, has interpreted the intent to be gleaned from such verbiage, we are bound by such decision. The cases cited by counsel for Dora W. Smith are all distinguishable either on legal theory or on the language used in the agreements."

said W. W. Davis on any property he now has or may in any manner acquire; . . . and hereby does relinquish and surrender forever all claims of any nature she may now or hereafter have against any property that said W. W. Davis may now have or may hereafter in any manner acquire.' '' (P. 454.) Holding that she was thereby precluded from succeeding to and administering her husband's estate,[3] the court said: ''The obvious purpose [of the separation agreement] was not only to definitely sever the property rights of the parties, but mutually to relinquish and release all inheritable interest of each in the property and estate of the other. It was apt and ample in form for the purpose, and that such was its effect we have no doubt. . . . The wife contracted away her inheritable interest in her husband's property, . . .'' (Pp. 455-456.) It is notable that this conclusion was reached although the agreement did not employ terms such as ''inherit,'' ''right of inheritance,'' ''heir'' or ''estate.''

We agree with the conclusion of the trial judge that because of the similarity of language involved, the present action is controlled by the decision in *Davis*. Here, as in that case, the purpose of the agreement was to effect a complete settlement of property rights upon the separation of the contracting spouses. It is true that while the claims released in *Davis* were ''against any *property*'' (italics added) including after-acquired property, the claims released by paragraph 6 in the instant case were those of each of the parties ''against the other.'' If our examination of the agreement were confined to the *sixth* paragraph it might be argued that, as was held in the *Estate of Minier* (1932) 215 Cal. 31, 35 [8 P.2d 123, 81 A.L.R. 689], the release did not purport to run to any property of the parties but was intended merely to release each party from all personal liability to the other and that under the principles set forth *supra* such language cannot be enlarged. Such an argument is made by appellant herein. But the requisite intention of the parties must be deduced from the agreement as a whole. (*First Western Bank & Trust Co.* v. *Omizzolo, supra,* 176 Cal. App.2d 555, 558; 23 Am.Jur.2d, p. 873.) Therefore, not limiting ourselves to the *sixth* paragraph but turning our attention also to the *ninth* paragraph, we observe that under the provisions of the latter all property severally held by the parties, all property acquired by them under the agreement and all

---

[3]Under former Code Civ. Proc., § 1365, the widow's right to administer her husband's estate depended on her being entitled ''to succeed to his personal estate or some part thereof.''

property thereafter acquired by them "shall be and remain the *separate property and estate* of the party so holding, acquiring or to acquire the same, *free from any claim or claims of the other.*" (Italics added.) This clause in effect states that each of the parties has released all claims *against all property* of the other, however acquired. It is thus equivalent to the language of release in *Davis*[4] and in the words of that case shows an intention "mutually to relinquish and release all inheritable interest of each in the property and estate of the other." (106 Cal. at p. 456.) We have no doubt that in the present instance the widow's intention to waive her right of inheritance appears from the agreement by "necessary implication."

The cases upon which appellant places principal reliance are either inapplicable to or distinguishable from the case before us. We deem inapplicable here those cases cited by appellant which deal with questions of waiver of a right to take under the will of a spouse or to take the proceeds of an insurance policy on the life of a spouse pursuant to a written designation of beneficiary. (See *Estate of Crane* (1936) 6 Cal.2d 218 [57 P.2d 476, 104 A.L.R. 1101] ; *Grimm* v. *Grimm* (1945) 26 Cal.2d 173 [157 P.2d 841] ; *Estate of Buchman* (1955) 132 Cal.App.2d 81 [281 P.2d 608, 53 A.L.R.2d 451].) The position of a beneficiary under a will and one named in an insurance policy subject to change by the insured are similar since each involves a mere expectancy dependent upon the effective exist-

---

[4]The crucial language in *Davis* is probably not as strong as a release as the pertinent language in *Estate of Walker* (1915) 169 Cal. 400 [146 P. 868] or in *Estate of Cover* (1922) 188 Cal. 133 [204 P. 583], a point noted by the court in the former decision. In *Walker* the agreement contained the following provision: " 'Second. And the said parties hereby release each to the other, all claim for support, or *any claim against the other's estate* that he or she might have or assert, now or in the future, to any estate now assigned, or hereafter acquired by either, whether received by purchase, descent, inheritance or otherwise.' " (Italics added.) (169 Cal. at p. 401.) The court there observed that "The phrase 'against the other's estate,' according to common usage, clearly refers to and includes the right of inheritance, . . .'' (P. 403.) In *Cover*, under the provisions of a marriage settlement agreement, the wife " 'in consideration of . . . and in respect of the wishes of the said husband,' expressly released and waived 'all right or claim which she may have in or to the estate of Aaron Cover at his death by virtue of being wife or widow . . . and every part and parcel of the said estate from all of her marital claims at his death . . . and all community right and dower right of whatsoever nature or kind which she has against the estate. . . .' " (188 Cal. at p. 136.) The court said: "It is conceded, as indeed it must be, that the agreement in question, if valid, operated to release and relinquish whatever right the widow of the deceased may have had, as widow and technical heir of the deceased, to succeed to any portion of his estate, . . ." (P. 138.)

ence of the will or designation of beneficiary at the time of the death of the testator or insured as the case may be. (*Thorp* v. *Randazzo* (1953) 41 Cal.2d 770, 773 [264 P.2d 38].) At the same time both differ from a right to inherit in an intestacy case since in the former two situations the claimant may rely on his or her ''distinct status'' as the named beneficiary in the will or policy quite apart from any former marital relationship existing between the parties (*Thorp* v. *Randazzo, supra*) and the inference may be drawn that the decedent by not changing his or her will or designation of beneficiary did not wish to exclude the beneficiary. The tests to be applied in determining whether such rights have been waived are set forth in the cases last cited and are not applicable to the instant situation.

We turn to consider and distinguish other cases on which appellant heavily relies. In *Jones* v. *Lamont, supra,* 118 Cal. 499, the separation agreement provided for what the court regarded as an equal division of the property, provided for an individual release of each spouse from the existing debts and obligations of the other and further stated that '' 'each party is hereby released and absolved from all obligations and liabilities for the future acts and debts of each other, . . .' '' (P. 500.) The court held that there was no release of claims upon the future acquisitions of the other or claims upon the estate of the other at death, distinguishing that case from *Estate of Davis, supra,* 106 Cal. 453, where there ''were apt words importing an intention never to assert in any way any right to the property of the husband, present or future. No such intention can be derived from the language of the contract before us on the part of either one of the parties to it.'' (P. 501.) As we have pointed out, the agreement entered into by Mr. and Mrs. Smith in the instant case does contain language importing an intention not to assert any claim against any property of the husband, present or future.

In *Estate of Minier, supra,* 215 Cal. 31, the agreement provided that '' 'from this time on neither of said parties shall have or claim anything from the other, and each of said parties does hereby release the other in full of all claims and demands of every nature and kind whatsoever, as well in the past as in the present and future. . . .' '' The Supreme Court held that such language was distinguishable from that used in *Davis* and, unlike *Davis*, such release did not ''purport to run to any property of the parties.'' (P. 35.) *Minier* is thus clearly distinguishable from the instant case. *Estate of Fulton, supra,*

23 Cal.App.2d 563, cited by appellant, did not involve a property settlement agreement.

In *Estate of Hurley, supra,* 28 Cal.App.2d 584, the property settlement agreement provided that " 'The second party [husband] shall not claim, on and after this date, any interest whatever in any real or personal property, including the California property, belonging to or standing in the name of first party, and the first party shall not claim any interest whatsoever in any real or personal property belonging to and standing in the name of the second party, and each shall take their respective properties, free and clear of all claim of the other, . . .' " (P. 587.) It was there held that the agreement did not constitute a waiver of the right of inheritance by either party thereto since "There is no release in terms by either one of claims upon the future acquisitions of the other, nor, in terms, any release by either one upon the estate of the other in case of death." (Pp. 588-589.) The court, using language almost identical with that found in *Jones* v. *Lamont, supra,* 118 Cal. 499, distinguished *Davis* saying "In that case also there were appropriate words indicating an intention never to assert in any way any right to the property of the husband, present or future. No such intention can be derived from the language of the contract before us on the part of either one of the parties to it." (P. 589.) As we have explained, the instant agreement *does* contain language indicating an intent not to claim the husband's property, present or future.

Finally in *Estate of McNutt, supra,* 36 Cal.App.2d 542, the property settlement agreement provided that the surviving wife " 'agrees to and does hereby grant, remise, release and quitclaim unto the said William Slavens McNutt all her right, title, interest and dowry in and to all *real estate* whereof the said William Slavens McNutt is or may hereafter become seized or possessed and also agrees and does hereby release the said William Slavens McNutt of and from all claims of every character and description.' " (Italics added.) (36 Cal.App. 2d at pp. 548-549.) Although the court upheld the trial court's decision declaring the agreement invalid for fraud and duress, it considered as an alternative issue the question whether the wife was estopped to attack the property settlement agreement after the husband's death. On this issue it said: "At the most, she released nothing but her (1) dower interest, and (2) interest in his realty. In view of the language used, the court would not have been justified in reading into the contract terms which the parties did not deem necessary to express their intention." (P. 549.) Unlike *McNutt,* the instant

agreement contains a release by appellant of all claims to "All property, whether real, personal or mixed" however or whenever acquired.

The motion to dismiss the appeal of appellant Dora W. Smith in her capacity as administratrix of the estate of decedent is granted and the appeal of said administratrix is dismissed. The judgment and order appealed from is affirmed.

Molinari, J., and Sims, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 25, 1966.